IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **JENIFER A. VANHORN,**<br><br>**Plaintiff,**<br><br>v.<br><br>**UNITED STATES POSTAL SERVICE,**<br><br>**Defendant.** | Case No. 21-1067-DDC-GEB |

## MEMORANDUM AND ORDER

Plaintiff Jenifer A. VanHorn worked for defendant United States Postal Service for more than 20 years. Appearing pro se,[1] she now brings claims against her former employer for retaliation and disability discrimination under Title VII of the Civil Rights Act of 1964 and the Rehabilitation Act.[2] *See* Doc. 1 (Compl.). Plaintiff bases these claims on several different adverse employment actions: defendant abolished her job and reassigned her in 2017, progressively disciplined her for extended absences in 2018, and eventually, terminated her

---

[1] Because plaintiff filed her suit pro se, the court construes her filings liberally and holds them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court doesn't serve as a pro se plaintiff's advocate. *See id.* Plaintiff's pro se status doesn't excuse her from complying with the court's rules or facing the consequences of noncompliance. *See Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994).

[2] Plaintiff's Complaint raises claims under the Americans with Disabilities Act, as amended by the ADA Amendments Act of 2008 (the "ADAAA"). *See* Doc. 1 at 7. But the ADAAA expressly excludes federal employees from coverage under that statute. *See* 42 U.S.C. § 12111(5)(B)(i); *see also Padilla v. Mnuchin*, 836 F. App'x 674, 676 n.1 (10th Cir. 2020). As a result, plaintiff's exclusive remedy for disability discrimination is through the Rehabilitation Act. *See Padilla*, 836 F. App'x at 676 n.1. The court thus construes plaintiff's claims for disability discrimination as ones brought under the Rehabilitation Act. This doesn't change the substance of plaintiff's claims—the Rehabilitation Act incorporates the standards of the ADAAA, *see* 29 U.S.C. § 791(f), and courts treat claims under either statute as essentially the same, *see Padilla*, 836 F. App'x at 676 n.1.

employment in 2019.  In her Complaint, plaintiff also raises claims about workers' compensation for an on-the-job injury, disability and retirement benefits, and health and life insurance.

Before the court is defendant's Partial Motion to Dismiss almost all these claims for untimeliness, failure to exhaust administrative remedies, and lack of jurisdiction (Doc. 12). Plaintiff has filed a Response (Doc. 18), and defendant has filed a Reply (Doc. 19).  For reasons explained below, the court grants defendant's Partial Motion to Dismiss.  As a result, only a few of plaintiff's claims remain standing after this Order.  Those claims are ones defendant didn't move to dismiss:  plaintiff's Title VII and Rehabilitation Act claims for discrimination and retaliation based on defendant abolishing her modified clerk position in 2017 and reassigning her to a call center.  So, the case can proceed on those claims.

## I.     Background

The following facts come from plaintiff's Complaint (Doc. 1).  The court accepts plaintiff's "well-pleaded facts as true, view[s] them in the light most favorable to [her], and draw[s] all reasonable inferences from the facts" in her favor.  *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).  The court also draws certain facts from several administrative decisions by the Equal Employment Opportunity Commission (EEOC) on plaintiff's various administrative complaints, which defendant attached to its Motion to Dismiss. *See* Docs. 13-2 (Ex. A), 13-3 (Ex. B), 13-4 (Ex. C), 13-5 (Ex. D).  Plaintiff's Complaint references those decisions, they are central to plaintiff's claims, and there's no dispute about their authenticity.  *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (recognizing that courts can consider such documents in such circumstances on a motion to dismiss).  Defendant also attached plaintiff's underlying administrative complaints in those EEOC decisions.  *See* Docs. 13-6 (Ex. E), 13-7 (Ex. F), 13-8 (Ex. G).  The court considers

those documents as well because plaintiff references them in her Complaint, they are central to her claims, and there's no dispute about their authenticity. *Khalifah v. Brennan*, No. 19-CV-2240-JAR-KGG, 2020 WL 1028299, at *3 (D. Kan. Mar. 3, 2020) (considering plaintiff's EEO complaints of discrimination against the Postal Service, which defendant attached to its motion to dismiss).

The factual allegations of plaintiff's Complaint are a bit fuzzy. So, the court relies heavily on the EEOC's prior decisions on each of plaintiff's EEO complaints to determine the claims she raises in her current Complaint. The court discusses the procedural history of those complaints later in its analysis section, as that history directly bears on whether plaintiff has exhausted her administrative remedies and whether her claims are timely filed. But for now, the court provides a generalized factual background as context for plaintiff's claims.

Plaintiff began working for defendant in 1998. Doc. 1 at 18 (Compl.). She sustained an on-the-job back injury in 1999 and has had two back surgeries over the years since then. *Id.* at 3, 9–10. These injuries and surgeries have caused plaintiff great physical, emotional, and financial distress. *Id.* at 9–10, 17–18.

In 2015, plaintiff and defendant entered a settlement agreement where plaintiff agreed to work as a modified clerk at defendant's Downtown Wichita Station. Doc. 13-2 at 1. Under that agreement, defendant promised to maintain that position "indefinitely until otherwise agreed by the parties." *Id.* But in September 2017, defendant abolished plaintiff's position. *Id.* at 2; *see also* Doc. 1 at 12. And the following month, in October 2017, defendant reassigned her to a Customer Care Center in Wichita. Doc. 13-2 at 2; *see also* Doc. 1 at 13.

Plaintiff never reported for her reassigned job at the Customer Care Center. Doc. 13-2 at 2; Doc. 13-4 at 2. Plaintiff alleges she couldn't work because of her injuries, so she took FMLA

3

leave. Doc. 13-4 at 2. But when that leave expired in March 2018 and plaintiff still didn't return to work, defendant began progressively disciplining her. *Id.* at 2–3. Defendant issued plaintiff a Letter of Warning on April 11, 2018. *Id.* at 3. Defendant then suspended her for seven days in May 2018, and again for 14 days in July 2018. *Id.* And finally, after plaintiff's continued absence from work, defendant terminated her employment in March 2019. *See* Doc. 1 at 3.

Plaintiff's Complaint also discusses several aspects of her employment benefits. She alleges that in May 2020, her disability retirement benefits were approved after a lengthy administrative proceeding and appeal. *See* Doc. 1 at 14–15. But, she alleges, these benefits were made retroactive only to her termination date in March 2019—and not retroactive to the date of her application for the benefits, in August 2018. *See id.* at 14–15. Plaintiff also alleges that defendant "unlawfully terminated" her health and life insurance benefits in January 2019, effective February 2020. *Id.* at 15. And, seemingly related to this termination, plaintiff alleges that defendant turned all billing issues over to the Department of Treasury, which took collection actions against her and ruined her credit, among other things. *Id.* at 9, 18. Finally, plaintiff alleges that the Office of Workers Compensation Programs (OWCP) refused to compensate her for $10,000 in back pay when she was out of work from her back surgeries in 2000. *Id.* at 15.

Throughout this period, plaintiff initiated several EEO proceedings. They culminated in three separate EEOC decisions:

- **August 7, 2018, reconsideration denied March 8, 2019**: EEOC decided that defendant breached the 2015 settlement agreement when it abolished plaintiff's modified clerk position and reassigned her to the Customer Care Center. *See generally* Docs. 13-2 (decision), 13-5 (reconsideration decision).

- **August 27, 2020**: EEOC concluded defendant didn't discriminate against plaintiff when it terminated her employment for excessive absences. *See generally* Doc. 13-3.

4

- **December 7, 2020**: EEOC concluded defendant didn't discriminate or retaliate against plaintiff when it abolished her modified clerk position and reassigned her to the Customer Care Center; also, defendant didn't discriminate or retaliate against plaintiff when it suspended her for 14 days in July 2018 for excessive absences. *See generally* Doc. 13-4.

## II.     Legal Standard

Defendant moves to dismiss one of plaintiff's benefits-based claims under Rule 12(b)(1) for lack of subject matter jurisdiction. The rest of defendant's arguments for dismissal—focusing on untimeliness and failure to exhaust—rely on Rule 12(b)(6).

Under Rule 12(b)(1), a defendant may move the court to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). Federal district courts have original jurisdiction over all civil actions arising under the constitution, laws, or treaties of the United States or where there is diversity of citizenship. 28 U.S.C. §§ 1331–32. "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). The party invoking federal jurisdiction bears the burden to prove it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018).

Under Rule 12(b)(6), a party may move the court to dismiss an action for failing "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion to dismiss, the court must assume that the factual allegations in the complaint are true, but it is "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Id.* (quoting *Twombly*, 550 U.S. at 555). And, while this pleading standard doesn't require "'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III.   Analysis

Defendant essentially treats plaintiff's Complaint as a vessel for all the discrimination and retaliation claims she has raised in her EEO complaints over the years. While plaintiff doesn't raise each of those claims clearly in her Complaint, she does reference each EEOC proceeding mentioned above in the section of her Complaint about the requirement for exhaustion of administrative remedies. So, liberally construing plaintiff's pro se Complaint—as the court must—the court addresses each claim plaintiff raised in the EEOC proceedings. But the court recognizes that plaintiff's claims fall in three general categories: (1) claims about defendant abolishing her modified clerk position and reassigning her to a customer care center; (2) claims about defendant progressively disciplining and eventually terminating her employment for extensive attendance issues; and (3) claims about defendant and other federal agencies terminating and incorrectly calculating various employment-related benefits owed to plaintiff.

Before the court addresses those three categories, the court first discusses the requirements of administrative exhaustion and timeliness. Those requirements are the focus of defendant's motion to dismiss, and ultimately, they dispose of almost all of plaintiff's claims.

A.     **Administrative Exhaustion and Timeliness**

Before suing in federal court, federal "employees alleging discrimination or retaliation prohibited by Title VII or the Rehabilitation Act must comply with specific administrative complaint procedures in order to exhaust their administrative remedies." *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020) (quotation cleaned up). Among these requirements, a federal employee must first "initiate contact with an Equal Employment Opportunity counselor at her agency within 45 days" of the allegedly discriminatory act. *Id.* (quotation cleaned up); *see also* 29 C.F.R. § 1614.105. Failing to do so means the employee hasn't exhausted her administrative remedies. *See Sizova v. Nat'l. Inst. of Standards & Tech.*, 282 F.3d 1320, 1325 (10th Cir. 2002). But, the 45-day time limit is subject to equitable tolling. *See id.*; *see also* 29 C.F.R. § 1614.105(a)(2).

If the employee and the EEO counselor can't informally resolve the complaint, the employee then must file a formal complaint fully describing the alleged discriminatory or retaliatory acts. 29 C.F.R. § 1614.106(a)–(c). This step is especially important when courts later determine whether a plaintiff has exhausted her administrative remedies. While courts liberally construe the allegations in a formal complaint, a plaintiff has exhausted her administrative remedies only for claims within "the scope of the administrative investigation that can reasonably be expected to follow from the discriminatory *acts* alleged" in the formal complaint. *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007); *see also Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) ("The ultimate question is

whether the conduct alleged in the lawsuit would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made in the EEOC charge." (quotation cleaned up)).  As a result, courts will dismiss claims that weren't raised in an administrative complaint.  *See Cirocco v. McMahon*, 768 F. App'x 854, 861 (10th Cir. 2019) (affirming dismissal on administrative exhaustion grounds where the "retaliation claim [plaintiff] designated in her EEO complaint was simply not the retaliation claim she pursued in the district court").  But, the court emphasizes, failing to exhaust administrative remedies is an affirmative defense, not a jurisdictional bar to suit.  *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018).  Thus, the court analyzes "administrative exhaustion under a 12(b)(6), rather than the 12(b)(1) standard[.]"  *Khalifah*, 2020 WL 1028299, at *2.

Finally, an employee's EEO complaint often ends in a final agency decision.  The employee can appeal that final agency decision to the EEOC.  *See* 29 C.F.R. § 1614.401.  After the EEOC decides the appeal, the employee then has 90 days from receiving the decision to file a civil action in federal district court.  *See* 29 C.F.R. § 1614.407(c).  But if the employee requests reconsideration of the EEOC's decision, the 90-day clock doesn't start to run until the employee receives a decision on the reconsideration request.  *Conkle v. Potter*, 352 F.3d 1333, 1336 (10th Cir. 2003).  The Tenth Circuit often presumes that an employee receives an EEOC decision three to five days after the date of decision.  *See Lozano v. Ashcroft*, 258 F.3d 1160, 1165 (10th Cir. 2001).  The court follows defendant's lead and applies the more generous five-day presumption to determine when plaintiff's 90-day period to file suit began.  *See Ross v. Staffmark Grp.*, 855 F. App'x 455, 457 (10th Cir. 2021) (approving application of five-day presumption).

With those principles in mind, the court now applies the governing standards to plaintiff's claims. The court decides whether it should dismiss plaintiff's claims for failure to exhaust and untimeliness.

### B.     Abolishment of Plaintiff's Position and Reassignment

As discussed above, the parties entered a settlement agreement in October 2015. In it, defendant promised to maintain plaintiff's position as a modified clerk in its downtown Wichita office "indefinitely." But defendant then abolished plaintiff's position two years later in October 2017, reassigning her to a Customer Care Center in Wichita. Plaintiff raised two separate claims in two separate EEO proceedings arising from this arrangement. The court discusses these two claims, in turn.

#### 1.   Breach of Settlement Agreement

The first claim alleges that defendant breached the settlement agreement when it abolished plaintiff's position and reassigned her to a new one. At the conclusion of the administrative proceedings, the EEOC determined that defendant had breached the settlement agreement and ordered defendant to reinstate plaintiff in her old position. Doc. 13-2 at 4. That decision was dated August 7, 2018. *Id.* at 7. For whatever reason, plaintiff then sought reconsideration. And the EEOC denied reconsideration on March 8, 2019. Doc. 13-5 at 1. That decision informed plaintiff that she had 90 days from receiving the decision to file a civil action in federal district court. *Id.* at 2.

Plaintiff filed her Complaint in this case two years later, on March 12, 2021. That's a lot longer than 90 days after she received the EEOC's reconsideration decision. Thus, to the extent plaintiff's Complaint raises any claims about the 2015 settlement agreement, those claims are time-barred. Because those claims are untimely and plaintiff can't assert them again, the court

9

dismisses the claims with prejudice. *See AdvantEdge Bus. Grp. v. Thomas E. Mestmaker & Assocs., Inc.*, 552 F.3d 1233, 1236 (10th Cir. 2009) (recognizing "that a dismissal without prejudice can have the practical effect of a dismissal with prejudice" where the claim is time-barred); *see also D.L.F. v. Kijakazi*, No. 21-2243-SAC, 2021 WL 5492912, at *2 (D. Kan. Nov. 22, 2021) (dismissing untimely claim with prejudice).

### 2. Discrimination and Retaliation

But to the extent plaintiff raises claims for disability discrimination and retaliation under Title VII and the Rehabilitation Act based on the same facts, those claims survive. Plaintiff filed another EEO complaint about the abolishment of her modified clerk position that focused only on alleged discrimination and retaliation. *See* Doc. 13-7. The administrative proceedings on that complaint didn't conclude until December 7, 2020. *See* Doc. 13-4. On that date, the EEOC determined that "the preponderance of the evidence did not establish that [plaintiff] was discriminated against by [defendant] as alleged." *Id.* at 4. That decision informed plaintiff that she had 90 days from receiving the decision to file a civil action in federal district court. *Id.* at 5.

As Circuit authority permits, the court presumes that plaintiff received the EEOC's decision five days after it was decided, *i.e.*, December 12, 2020. Plaintiff filed her complaint on March 12, 2021—the 90th day after she received the EEOC decision. Thus, to the extent plaintiff raises claims decided by the EEOC on December 7, 2020, plaintiff asserted those claims timely. The court notes that defendant, also applying the five-day presumption, recognizes that the claims decided in that EEOC proceeding are exhausted and timely filed. *See* Doc. 13 at 18 n.7. As a result, defendant "does not seek dismissal of Plaintiff's Title VII and Rehabilitation Act claims based on the abolishment and reassignment at this time." *Id.* Those claims can proceed.

### C.     Progressive Discipline and Termination

Plaintiff's second category of claims focuses on how defendant (1) progressively disciplined her throughout 2018 after she failed to report to work, and (2) eventually terminated her employment in March 2019 for excessive absences. The court dismisses all but one of these claims.

#### 1.  Progressive Discipline

Plaintiff filed an EEO complaint focused on three aspects of defendant's progressive discipline in 2018: (1) a Letter of Warning in April; (2) a 7-day suspension in May; and (3) a 14-day suspension in July. The court addresses each claim below.

*First*, plaintiff didn't seek EEO counseling on the Letter of Warning in a timely manner. The regulations governing discrimination claims raised by federal employees require employees to seek EEO counseling within 45 days of the alleged discriminatory act. Plaintiff received the letter of warning on April 11, 2018 but didn't contact an EEO counselor until July 13, 2018—more than 90 days later. Doc. 13-8 at 27–28. Thus, in plaintiff's eventual appeal, the EEOC didn't consider any claim based on the Letter of Warning. *See* Doc. 13-4 at 2 n.2. So, plaintiff failed to exhaust her administrative remedies for this specific claim. The court thus dismisses the claim without prejudice. *See Chase v. Conner*, 107 F. App'x 827, 828 (10th Cir. 2004) (stressing that a dismissal for failure to exhaust administrative remedies is without prejudice).

*Second*, the same conclusion applies to plaintiff's 7-day suspension on May 7, 2018. Again, plaintiff didn't contact an EEO counselor about this suspension until July 13, 2018, more than 60 days after the suspension occurred. Doc. 13-8 at 27–28. As a result, the EEOC didn't consider that claim. *See* Doc. 13-4 at 2 n.2. Plaintiff thus has failed to exhaust her

11

administrative remedies for this specific claim.  The court thus dismisses this claim without prejudice.

But *third*, any claim based on plaintiff's 14-day suspension in July 2018 was exhausted properly and was filed timely.  The EEOC considered plaintiff's claim that defendant discriminated and retaliated against her when it suspended her for 14 days on July 30, 2018.  *See* Doc. 13-4 at 2.  But, the EEOC determined, defendant offered a legitimate, non-discriminatory and non-retaliatory reason for its decision:  plaintiff's FMLA leave had expired in March 2018 and she failed to return to work.  *See id.* at 2–4.  That decision was dated December 7, 2020.  *Id.* at 6.  It informed plaintiff that she had 90 days from receiving the decision to file a civil action in federal court.  *Id.* at 5.  As discussed above for another claim raised in this EEOC decision, the court presumes plaintiff received the decision five days after it was decided, *i.e.*, December 12, 2020.  Thus, plaintiff filed her Complaint on the last day possible:  March 12, 2021, exactly 90 days after she received the EEOC's decision.  And so, any claim based on plaintiff's 14-day suspension was filed timely.  Defendant implicitly recognizes as much because it doesn't seek to dismiss any claim based on plaintiff's 14-day suspension.  Those claims thus can proceed.

        **2.  Termination**

Another EEOC proceeding considered plaintiff's claims that defendant discriminated and retaliated against her when it issued her a Notice of Removal in February 2019 and terminated her employment the following month in March 2019.  The eventual EEOC decision on that claim, dated August 27, 2020, determined that plaintiff's continued absences and progressive discipline led to her termination, rather than any discrimination or retaliation.  Doc. 13-3 at 3–5.  The decision informed plaintiff that she had 90 days from receiving the decision to file a civil action in federal district court.  *Id.* at 5–6

Applying the five-day presumption for receipt, the court presumes that plaintiff received the EEOC's decision on September 1, 2020. More than 90 days passed between that date and when plaintiff filed her Complaint with this court in this case. Thus, any claims about plaintiff's termination are time-barred. The court dismisses those claims with prejudice. *See AdvantEdge Bus. Grp. v. Thomas E. Mestmaker & Assocs., Inc.*, 552 F.3d 1233, 1236 (10th Cir. 2009) (recognizing "that a dismissal without prejudice can have the practical effect of a dismissal with prejudice" where the claim is time-barred); *see also D.L.F. v. Kijakazi*, No. 21-2243-SAC, 2021 WL 5492912, at *2 (D. Kan. Nov. 22, 2021) (dismissing untimely claim with prejudice).

### D.     Benefits-Based Claims

Finally, the court turns to allegations scattered throughout plaintiff's Complaint about denial and termination of various benefits. Specifically, plaintiff alleges that (1) the Office of Workers Compensation Programs (OWCP) miscalculated her benefits and owes her $10,000 in backpay, *see* Doc. 1 at 4, 15; (2) the Office of Personnel Management (OPM) erroneously calculated the effective date of her disability retirement, *see id.* at 3, 9, 14; and (3) defendant "unlawfully terminated" her health and life insurance benefits, never billed her for her benefits, and instead turned those bills over to the Treasury Department, negatively affecting her credit, *see id.* at 9, 18. The court dismisses all these claims, below.

#### 1.     OWCP Calculation of Benefits

*First*, plaintiff contends that OWCP miscalculated her benefits from the back injury she sustained while working for defendant. But, as defendant highlights, the court has no jurisdiction over this claim. The Federal Employees' Compensation Act (FECA) covers disability claims for work-related injuries sustained by federal employees while on the job. *See* 5 U.S.C. § 8102(a). FECA vests the Secretary of Labor with exclusive power to award or deny

compensation benefits. *See id.* §§ 8128, 8145. A decision to award or deny such benefits is "not subject to review by another official of the United States or by a court or by mandamus or otherwise." *Id.* § 8128(b)(2). So, as our court has recognized recently, "Congress has excluded judicial review of the substance of challenges to the award or denial of compensation for injuries" under FECA. *Hernandez v. U.S. Postal Serv.*, No. 5:19-CV-04002-HLT, 2020 WL 1809749, at *2 (D. Kan. Jan. 10, 2020); *see also Farley v. United States*, 162 F.3d 613, 615 (10th Cir. 1998) (recognizing that the decision to deny compensation benefits under FECA "is final and not subject to judicial review").

The court thus possesses no jurisdiction over plaintiff's claim that OWCP miscalculated her compensation benefits and that she is owed $10,000 in backpay. This is so even though plaintiff presents this claim as one for employment discrimination. *See Hernandez*, 2020 WL 1809749, at *2 (dismissing for lack of jurisdiction a collateral attack on an OWCP compensation decision raised in an employment discrimination complaint). So, the court dismisses plaintiff's OWCP compensation claim because it lacks jurisdiction to consider or adjudicate it. *See id.* (doing the same).

### 2. Disability Retirement Benefits

*Second*, plaintiff contends that defendant and OPM discriminated and retaliated against her by erroneously calculating her disability retirement benefits. Specifically, she alleges that she applied for disability benefits on August 18, 2018, that OPM denied her application, but then, after she appealed to the Merits Systems Protection Board (MSPB), OPM reversed course and ultimately approved her disability retirement benefits on May 18, 2020. *See* Doc. 1 at 14. But, plaintiff argues, OPM still erred because it should've paid benefits back to August 18, 2018

(the date of her application), rather than to her termination date in March 2019. *See id.* at 14–15. Plaintiff hasn't exhausted this claim.

In its motion, defendant accurately explains the intricate alternative paths federal employees can take to exhaust their administrative remedies for benefits claims and so-called "mixed cases," ones where an employee challenges a personnel action that she believes was a result of discrimination. *See Kloeckner v. Solis*, 568 U.S. 41, 44–45 (2012) (stepping through the relevant administrative procedures). But the court need not delve into those intricacies because it's apparent from the current record that plaintiff hasn't presented this specific claim challenging OPM's May 18, 2020 decision to any administrative agency. That decision by OPM postdates all the formal EEO complaints plaintiff filed about her reassignment, discipline, and termination. *See* Doc. 13-6 (Pl.'s EEO Compl. dated June 24, 2019); Doc. 13-7 (Pl.'s EEO Compl. dated Feb. 14, 2018); Doc. 13-8 (Pl.'s EEO Compl. Dated Aug. 25, 2018). So, by definition, plaintiff hasn't exhausted her administrative remedies for her claim that that decision was wrong.

To be sure, plaintiff's August 25, 2018 EEO complaint references her disability retirement application and requested "approval ASAP with absolutely no negotiating[.]" Doc. 13-8 at 1. But that complaint said nothing about a retroactive date or how OPM should calculate her benefits, which is the focus of plaintiff's claim in this court. The court thus concludes that the claim plaintiff raised in her EEO complaint couldn't reasonably lead to an investigation on the claim she now brings in this court. *See Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) (explaining that plaintiffs exhaust their administrative remedies only when their claims "fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made in the EEOC charge" (quotation cleaned up)).

Also—and while no party raises this point—the court notes that the eventual EEOC decision on plaintiff's EEO complaint referenced an application "for disability retirement due to [plaintiff's] permanent conditions," filed sometime in late 2018. Doc. 13-4 at 3. This decision also notes that, on "March 12, 2019, [plaintiff] had a hearing before the Social Security Administration, and, on January 17, 2020, she was approved for disability benefits retroactive to September 18, 2017." *Id.* The court can't tell whether this application and these approved benefits referenced by the EEOC are the same application and benefits plaintiff now references in her Complaint. But even construing plaintiff's Complaint liberally, the court cannot conclude that the references are the same. Plaintiff's Complaint in this case specifically references OPM, the MSPB, and a May 18, 2020 decision approving benefits retroactive to March 25, 2019, the date when defendant terminated plaintiff. Those specific dates and agencies appear nowhere in the EEOC decision, which references the Social Security Administration and a January 17, 2020 decision approving benefits retroactive to March 25, 2019—in other words, a different agency, and different relevant dates.

In short, the current record doesn't demonstrate that plaintiff has exhausted her administrative remedies for this claim. And plaintiff doesn't otherwise indicate that she has filed any other EEO complaint or MSPB appeal raising this specific claim. Because plaintiff hasn't exhausted her administrative remedies, the court dismisses this claim without prejudice.

### 3. Health and Life Insurance Benefits

*Third*, plaintiff contends that defendant discriminated and retaliated against her when it terminated her health and life insurance benefits. She also alleges that defendant "never presented [her] with a bill," and instead turned the "bills over to the Treasury Bureau, ruining

16

[her] credit." Doc. 1 at 9. But plaintiff hasn't exhausted her administrative remedies for these claims either.

None of plaintiff's EEO complaints presented any allegations about defendant terminating her health or life insurance benefits, nor about bills from the Treasury Department. None of the resulting EEOC decisions discussed such a claim. And plaintiff hasn't otherwise demonstrated that she pursued her administrative remedies for this specific claim. Plaintiff thus hasn't exhausted her administrative remedies. The court dismisses the claim without prejudice.

### E.     Punitive Damages

There's one last issue. In her Complaint, plaintiff seeks $150,000 in punitive damages. *See* Doc. 1 at 4. But as defendant highlights, absent a waiver of sovereign immunity, plaintiff can't recover punitive damages from the United States. *Sanner v. U.S. Gov't*, 979 F. Supp. 1327, 1328 n.2 (D. Kan. 1997). And Congress hasn't waived sovereign immunity for punitive damages in Title VII or Rehabilitation Act claims. *See* 42 U.S.C. §§ 1981a(b)(1) (providing that an employment discrimination plaintiff "may recover punitive damages . . . against a respondent (*other than a government, government agency or political subdivision*)" (emphasis added)). So, plaintiff can't recover punitive damages in her Title VII and Rehabilitation Act suit against defendant U.S. Postal Service, a government agency. *Garity v. Brennan*, 845 F. App'x 664, 665 (9th Cir. 2021) (affirming district court decision denying punitive damages in Title VII and Rehabilitation Act suit against U.S. Postal Service "because punitive damages are not recoverable" in such a suit); *see also Baker v. Runyon*, 114 F.3d 668, 671 (7th Cir. 1997) (recognizing that Congress has waived the U.S. Postal Service's sovereign immunity from suit but hasn't waived the U.S. Postal Service's sovereign immunity from punitive damages). The court thus dismisses plaintiff's punitive damages claim.

## IV.     Conclusion

The court dismisses each of plaintiff's claims that is a target of defendant's Motion to Dismiss. But some of plaintiff's claims—those that defendant doesn't seek to dismiss—remain. Those claims are plaintiff's Title VII and Rehabilitation Act claims for disability discrimination and retaliation based on: (1) defendant abolishing plaintiff's modified clerk position and reassigning her to a different position in October 2017; and (2) defendant suspending plaintiff for 14 days in July 2018. Those claims can proceed.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Partial Motion to Dismiss (Doc. 12) is granted.

**IT IS SO ORDERED.**

**Dated this 26th day of January, 2022, at Kansas City, Kansas.**

>                                    **s/ Daniel D. Crabtree**
>                                    **Daniel D. Crabtree**
>                                    **United States District Judge**