IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JENIFER A. VANHORN,

             Plaintiff,

v.                                                        Case No. 21-1067-DDC-GEB

UNITED STATES POSTAL SERVICE,

             Defendant.

## MEMORANDUM AND ORDER

Plaintiff Jenifer A. VanHorn, proceeding pro se,[1] sued her former employer defendant

United States Postal Service (USPS) for discriminating and retaliating against her.  She claims

that USPS violated Title VII of the Civil Rights Act of 1964 and the Rehabilitation Act.  Doc. 59

at 8–9 (Pretrial Order ¶¶ 4.a.i.–ii.).

Defendant now moves for summary judgment against all claims under Fed. R. Civ. P. 56.

Defendant has filed a Motion for Summary Judgment (Doc. 61) and Memorandum in Support

(Doc. 62).  Plaintiff has responded (Doc. 64) and defendant has replied (Doc. 66).  Defendant

also has moved to strike the exhibits plaintiff filed with her Response (Doc. 67), and plaintiff has

filed a Surreply, responding both to defendant's summary judgment and Motion to Strike

arguments (Doc. 68).  For reasons explained below, the court grants defendant's Motion for

---

[1]     Because plaintiff filed her suit pro se, the court construes her filings liberally and holds them "to a
less stringent standard than formal pleadings drafted by lawyers."  *Hall v. Bellmon*, 935 F.2d 1106, 1110
(10th Cir. 1991).  But the court doesn't serve as a pro se plaintiff's advocate.  *See id.*  Plaintiff's pro se
status doesn't excuse her from complying with the court's rules or facing the consequences of
noncompliance.  *See Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994).

Summary Judgment in part but denies it in part.  It also denies defendant's Motion to Strike as moot.

I.      **Uncontroverted Summary Judgment Facts**

The following facts either are stipulated in the Pretrial Order (Doc. 59), uncontroverted or, where controverted, stated in the light most favorable to plaintiff, the party opposing summary judgment.  *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

Plaintiff alleges that defendant discriminated and retaliated against her when it (1) abolished her modified clerk position and reassigned her to a different position in October 2017 and (2) suspended her for 14 days in July 2018.  Doc. 59 at 8–9 (Pretrial Order ¶¶ 4.a.i.–ii.).  The court provides the factual background relevant to both theories of recovery, below.

Plaintiff began her career as a part-time mail carrier for the post office in 1998.  *Id.* at 2 (Pretrial Order ¶¶ 2.a.1.–3.).  She soon worked full time as a mail carrier; and did so until she injured herself on the job in September 1999.  *Id.* (Pretrial Order ¶¶ 2.a.3.–5.).  Due to this work injury, plaintiff didn't work from April 2000 to May 2002.  *Id.* (Pretrial Order ¶ 2.a.6.).  In 2003, plaintiff began performing clerk duties for the post office.  *Id.* (Pretrial Order ¶ 2.a.8.).  Even though she didn't actually work as a mail carrier—due to restrictions from back pain—defendant "classified [plaintiff] as a mail carrier from 2000 to 2009[.]"  *Id.* (Pretrial Order ¶ 2.a.7.).

In 2009, defendant reclassified plaintiff as a "processing clerk[.]"  *Id.* (Pretrial Order ¶ 2.a.9.).  Plaintiff worked as a processing clerk—working on "drop shipment, postage due, collecting keys, deposit bag, and accountables"—until May 2013.  *Id.* (Pretrial Order ¶ 2.a.11.).  Plaintiff stopped working in May 2013 because of back pain.  *Id.* (Pretrial Order ¶ 2.a.12.).  Following a back surgery in August 2014, plaintiff returned to work in September of the same year.  *Id.* at 3 (Pretrial Order ¶¶ 2.a.14.–15.).  After her return, plaintiff's job responsibilities

remained the same except she no longer had responsibility for drop shipments.  *Id.* (Pretrial Order ¶ 2.a.16.).

### 2015 Equal Employment Opportunity (EEO) Complaint and Settlement

In August 2015, defendant offered plaintiff a modified clerk position at the downtown Wichita station tailored to accommodate her physical restrictions from her back injuries.  Doc. 62-4 at 3 (2018 EEOC Decision).  Plaintiff accepted this position on September 8, 2015.  *Id.* Shortly after, plaintiff asserted an EEO Complaint.  Plaintiff and her employer resolved this Complaint on October 27, 2015, memorializing their compromise in a written settlement agreement.  *Id.*  Relevant here, this agreement included a term mandating that plaintiff's modified position would remain "at the [Wichita, Kansas] Downtown Station indefinitely unless otherwise agreed by the parties."  *Id.* at 2.

### October 2017 Position Reassignment

On September 15, 2017, defendant issued plaintiff a letter, informing her that her position at the Downtown Station would no longer exist starting September 30, 2017.  Doc. 62-2 at 24–25 (VanHorn Dep. 102:3–104:15).  Though she had two weeks left in her role as a processing clerk, plaintiff stopped reporting to work the day she received the letter.  *Id.*; *see also* Doc. 59 at 3 (Pretrial Order ¶ 2.a.17.).  She took a sick leave of absence for a couple of weeks.  Doc. 59 at 3 (Pretrial Order ¶ 2.a.18.).

On September 26, 2017, defendant notified plaintiff that her position wasn't abolished. Doc. 62-2 at 27 (VanHorn Dep. 105:8–18); *see id* at 75 (September 26 Letter).  Instead, defendant reassigned plaintiff to the role of "distribution clerk" at the Delano Station in Wichita, Kansas.  Doc. 59 at 3 (Pretrial Order ¶ 2.a.19.).  The distribution clerk position required drop shipment duty.  *Id.*  Plaintiff—concerned primarily about the drop shipment requirement of this

job—expressed concerns about her reassignment to the Delano office's management.  *Id.*
(Pretrial Order ¶ 2.a.21.).

After plaintiff had expressed these concerns, defendant issued plaintiff another letter on
October 6, 2017, asking her for her preference for a job at the Customer Care Center.  *Id.*
(Pretrial Order ¶ 2.a.20.); *see also* Doc. 62-2 at 31 (VanHorn Dep. 113:2–25).  Plaintiff never
submitted her preference.  Doc. 59 at 3 (Pretrial Order ¶ 2.a.22.).  On October 18, 2017, without
a preference to consider, defendant sent plaintiff a letter, assigning her to the position of
customer care agent at the Wichita Customer Care Center.  *Id.* (Pretrial Order ¶¶ 2.a.23.–24.); *see
also* Doc. 62-2 at 36–37 (VanHorn Dep. 121:1–122:8); Doc. 62-2 at 78 (October 18 Letter).  The
letter informed plaintiff that her training at the Customer Care Center would run from October
30, 2017, to November 24, 2017.  Doc. 62-2 at 78 (October 18 Letter).  It provided plaintiff with
her work schedule and informed her that she would begin working as a customer care agent on
November 27, 2017.  *Id.*

### *July 2018 Suspension*

From September 15, 2017 (the date when she received notice of her reassignment) to July
2018 (when defendant suspended her employment) plaintiff didn't show up for work.  In this
period of absence from work, defendant issued plaintiff a series of letters and plaintiff
participated in a couple of pre-disciplinary interviews.  The court recounts these activities that
culminated in plaintiff's suspension, in more detail, below.

Plaintiff failed to report to her first day of training on October 30, 2017.  Doc. 59 at 3
(Pretrial Order ¶ 2.a.28.).  Over the next few weeks, plaintiff reached out to higher ups in the
government and at USPS to share her concerns about her reassignment to the Customer Care
Center.  On November 9, 2017, plaintiff spoke with someone at OPM or OWCP.  *Id.* (Pretrial

Order ¶ 2.a.29.).  On November 14, 2017, she spoke with the manager at the Customer Care

Center.  *Id.* (Pretrial Order ¶ 2.a.30.).  Plaintiff told the manager that she felt defendant had set

her up for failure with this reassignment—the computer aspect of the role particularly concerned

her.  *Id.* (Pretrial Order ¶¶ 2.a.27., 2.a.31.).

On November 14, 2017, defendant issued plaintiff a letter memorializing the fact that she

hadn't reported to work since September 15, 2017.  *Id.* (Pretrial Order ¶ 2.a.32.).  This letter

requested medical documentation for her absence and documentation from a doctor stating that

plaintiff wasn't a threat to herself or others.  *Id.* (Pretrial Order ¶¶ 2.a.33., 2.a.35.).  It also

explained that plaintiff had the option to attend the next training for her role at the Customer

Care Center, beginning November 27, 2017.  *Id.* (Pretrial Order ¶ 2.a.34.).  After she again failed

to show up for training, plaintiff's supervisor at the Customer Care Center sent her a letter, on

December 6, 2017.  *Id.* at 4 (Pretrial Order ¶¶ 2.a.36.–37.).  It requested an investigative

interview to discuss her continued absence from work since September 15, 2017.  *Id.*  This letter

scheduled the interview for December 11, 2017, and asked plaintiff to provide medical

documentation if illness or injury had caused her absence.  *Id.* (Pretrial Order ¶¶ 2.a.38.–39.).

About two months later, on February 9, 2018, plaintiff's psychologist, Dr. Schell,

provided a letter updating defendant on plaintiff's medical status.  *Id.* (Pretrial Order ¶ 2.a.40.).

Dr. Schell didn't report that plaintiff was unable to work, but she did report concerns about

suicide ideation.  *Id.* (Pretrial Order ¶¶ 2.a.41.–42.).  On February 28, 2018, defendant sent

plaintiff a letter that acknowledged Dr. Schell's letter.  *Id.* (Pretrial Order ¶ 2.a.43.).  It

recognized that Dr. Schell's letter didn't state whether plaintiff posed a threat to herself or others

and failed to provide a date when plaintiff could return to work.  *Id.*  This letter also

acknowledged that FMLA covered plaintiff's leave, but that this coverage would expire on April

1, 2018.  *Id.* (Pretrial Order ¶ 2.a.44.).  In response, on March 7, 2018, Dr. Schell reported that

plaintiff didn't pose a threat to herself or others, and the doctor believed plaintiff possibly could

return to work in September 2018.  *Id.* (Pretrial Order ¶ 2.a.45.).

On April 6, 2018, defendant sent plaintiff another letter, notifying her that her FMLA

leave had expired, and she still hadn't reported to work.  *Id.* (Pretrial Order ¶ 2.a.47.).  This letter

set a pre-disciplinary interview (PDI) for April 10, 2018.  *Id.* (Pretrial Order ¶ 2.a.48.).  Plaintiff

participated in this interview, and the next day defendant sent plaintiff a "Letter of Warning"—

citing plaintiff's failure to maintain a regular work schedule.  *Id.* (Pretrial Order ¶¶ 2.a.49.–50.).

This letter summarized plaintiff's pre-disciplinary interview this way:  plaintiff informed the

interviewer that she "knew what a PDI was," she "understood why [she was] being given a PDI,"

she was "aware of the attendance requirements of the Postal Service," and she was "aware of the

call out procedures for the Postal Service[.]"  Doc. 62-2 at 89 (April 11, 2018 Letter); Doc. 59 at

4 (Pretrial Order ¶ 2.a.51.).  When asked for a reason for her absences, plaintiff explained that

she was working on filing for disability retirement and hadn't realized she had to file for Social

Security disability first.  Doc. 62-2 at 89 (April 11, 2018 Letter); Doc. 59 at 4 (Pretrial Order ¶

2.a.52.).  The interviewer informed plaintiff that she needed to provide documentation about her

ability to work every 30 days.  Doc. 59 at 4–5 (Pretrial Order ¶ 2.a.53.).  Plaintiff lamented that

the paperwork for social security disability and OPM disability retirement overwhelmed her.  *Id.*

On May 1, 2018, defendant issued plaintiff another Letter of Warning to schedule a

second investigative interview based on her absence from work.  *Id.* at 5 (Pretrial Order ¶

2.a.54.); Doc. 62-2 at 92 (May 1, 2018 Letter) (scheduling interview for May 4, 2018).  On May

3, 2018, Dr. Schell informed defendant that plaintiff may have suffered from "TIA (mild stroke)

that caused memory impairment and problems in everyday life including . . . severe depression

(apathy, poor concentration, indecisiveness, loss of energy), manic features (irritability, racing thoughts, distractibility), severe anxiety, insomnia, inability to tolerate being around people, and inability to tolerate [ ] pain[.]"  Doc. 62-2 at 94 (May 3, 2018 Letter).  This letter also informed defendant that plaintiff had "an increase in posttraumatic symptoms, agoraphobia, and social anxiety."  *Id.*  On May 7, defendant suspended plaintiff for seven days for failing to maintain a regular work schedule.  Doc. 59 at 5 (Pretrial Order ¶ 2.a.56.); Doc. 62-2 at 95 (May 7, 2018 Letter).  This letter listed plaintiff's unexcused absences from April 10, 2018, through May 4, 2018—she had missed every workday within that period.  Doc. 62-2 at 95–97 (May 7, 2018 Letter).  It also suspended plaintiff for seven days—from May 19 to May 25, 2018—and notified her to report back to work on May 29, 2018, at her normal start time.  *Id.*

Plaintiff didn't report back to work then.  *See* Doc. 59 at 5 (Pretrial Order ¶ 2.a.57.).  On June 29, 2018, defendant sent plaintiff another letter due to her continued absences.  *Id.*  The letter asked plaintiff yet again to provide an explanation of the illness or injury preventing her from reporting to work.  *Id.*  It scheduled a third investigative interview for July 3, 2018.  *Id.*  Again, plaintiff didn't report to work after receiving the letter.  *Id.* (Pretrial Order ¶ 2.a.58.).  On July 30, 2018, defendant issued plaintiff a letter, suspending her for 14 days for failing to maintain a regular schedule.  *Id.* (Pretrial Order ¶ 2.a.59.); Doc. 62-2 at 100–03 (July 30, 2018 Letter).

### *2017 EEOC Complaint*

After plaintiff learned defendant had reassigned her to the Delano Station in Wichita, effective September 30, 2017, the union filed a grievance on behalf of plaintiff and her coworkers for "Improper Abolishment."  Doc. 62-4 at 10.  On October 19, 2017, the union withdrew the grievance after the parties settled the issue, concluding USPS management had

7

followed the contract.  *Id.* at 9.  Defendant offered plaintiff the role as a customer care agent at the Wichita Customer Care Center as a part of this settlement.  *Id.* at 10.

As explained above, plaintiff never reported for duty at the Customer Care Center.  *Id.* at 3.  Instead, plaintiff filed a new EEO Complaint alleging that the abolishment of her position at the Downtown Station breached her 2015 Agreement.  *Id.*  The Agency dismissed this Complaint as untimely and alternatively concluded that due to a change in circumstances—the decline in mail volume since the agency entered the agreement two years prior—the abolishment of her Downtown Station position didn't constitute a breach of the agreement.  *Id.* at 3–5.

On appeal, the EEOC found that the reassignment of plaintiff's position in fact violated plaintiff's 2015 settlement agreement.  *Id.* at 5.  Although the agency satisfied its obligations under the CBA, it breached the agreement's stipulation that plaintiff would remain employed at the Downtown Station.  *Id.*  After this finding, on October 10, 2018, defendant ultimately assigned plaintiff back to a modified position at its Downtown Station effective October 15, 2018.  Doc. 62-3 at 7 (October 10, 2018 Letter).

### *2019 Termination*

After receiving news that defendant had reinstated her position at the Downtown Station, plaintiff still didn't report for work.  Doc. 62-3 at 8 (February 25, 2019 Notice of Removal).  She failed to report to work between October 15, 2018 and February 6, 2019.  *Id.* at 8–10.  After engaging in progressive discipline and attempting to schedule an investigative interview with plaintiff to provide an opportunity to explain her absences, defendant issued a notice of removal on February 25, 2019.  *Id.* at 8–11.

### *Alleged Discrimination*

Plaintiff claims that defendant suspended her in July 2018 to retaliate against her for filing an EEO claim in 2015.  Doc. 59 at 5 (Pretrial Order ¶ 2.a.62.).  She believes that two managers—Teresa Rash and Lynn Gutierrez—are responsible for retaliating against her.  Doc. 62-2 at 67–68 (VanHorn Dep. 184:4–185:21); *see also* Doc. 59 at 5 (Pretrial Order ¶ 2.a.60.).  In 2015, plaintiff filed an EEO claim against Ms. Gutierrez.  Doc. 59 at 5 (Pretrial Order ¶ 2.a.63.).  Even though Ms. Gutierrez never spoke with plaintiff about her EEO claim, plaintiff believes that defendant's progressive discipline all stemmed from the 2015 EEO claim.  *Id.* (Pretrial Order ¶¶ 2.a.64.–65.).  Plaintiff also claims that defendant harassed her based on her physical and mental disabilities.  *Id.* (Pretrial Order ¶ 2.a.66.).

### *Employee Comparators*

Plaintiff alleges that defendant treated her differently than other workers injured on duty—"Hal Starkey and Louis Frank[.]"  Doc. 59 at 8–9 (Pretrial Order ¶ 4.a.i.).  She also alleges that defendant treated her differently than William ("Chas") Rogers. [2]  *See id.*  In

---

[2]      In the Pretrial Order, plaintiff's claim refers to "Chas Rogers" as a person who treated her unfairly, but throughout her briefing she uses Mr. Rogers as her primary example of defendant treating a similarly situated worker differently.  *See* Doc. 64 at 2; Doc. 68 at 1, 5.  Thus, the court construes plaintiff's Title VII discrimination claim to include Mr. Rogers as a comparator.  The Pretrial Order also refers to Louis Frank as someone defendant treated differently, *see* Doc. 59 at 8–9 (Pretrial Order ¶ 4.a.i.), but plaintiff's Surreply identifies Louis Frank as white female, *see* Doc. 68 at 1.  Plaintiff is a white woman as well, so the court doesn't consider plaintiff's contentions about Ms. Frank because they can't support her claim that defendant treated her differently based on race or sex.

      The court notes that plaintiff's Surreply (Doc. 68) was procedurally improper.  Under D. Kan. Rule 7.1(a) and (c), parties are permitted to file a dispositive motion, a response, and a reply.  Generally, surreplies aren't allowed.  *Mansoori v. Lappin*, No. 04-3241-JAR, 2007 WL 401290, at *1 (D. Kan. Feb. 1, 2007).  But the court may permit surreplies with leave of court in rare circumstances, *e.g.*, where a movant improperly raises new arguments in a reply.  *See id.*  Here, plaintiff never moved for leave of the court nor provided a reason that the "rare circumstances" justifying a surreply exist.  So, the court cites plaintiff's Surreply only to provide relevant context (of limited new factual allegations) and because defendant never objected to plaintiff's filing of the Surreply.

response to plaintiff's assertions, defendant produced evidence about two of its employees—Mr. Rogers and Mr. Starkey.  *See* Doc. 62 at 13–14.

Defendant released Mr. Rogers from employment due to a reduction in staff during March 2014.  Doc. 62-5 at 5–6.  Eight months later, in November 2014, defendant reinstated Mr. Roger's employment as a mail processing clerk.  *Id.* at 7.  In November 2015, defendant converted his role to customer care agent.  *Id.* at 8.  In November 2016, Mr. Rogers had a stroke. *Id.* at 23.  Due to ongoing stroke symptoms and treatment for them, Mr. Rogers missed worked sporadically from 2016 until he retired in 2020.  *Id.* at 9–20, 23–25.  In 2017, Mr. Rogers took leave covered by the FMLA; once he used all his FMLA coverage, he took leave without pay (LWOP).  *Id.* at 9–20.  Mr. Rogers participated in the reasonable accommodation program (DRAC) while he recovered from his stroke and received treatment.  *Id.* at 3.  Between January and July 2020, Mr. Rogers had worked more than 184 hours.  *Id.* at 17–18.

Defendant employed Hal Starkey as a mail carrier—on a modified job assignment at Delano Station.  Doc. 62-6 at 3 (Gutierrez EEO Investigative Affidavit).  Mr. Starkey's restrictions were "completely different than [plaintiff's] and he [worked as a] carrier" while she worked as a clerk.  *Id.*

### *Disability Retirement*

On July 25, 2018, plaintiff submitted a reasonable accommodation form and requested "disability retirement."  Doc. 62-3 at 2–3.  On October 9, 2018, defendant replied, informing plaintiff that the "Postal Service [was] prepared to explore reassignment" to accommodate her functional limitations, and requested that she complete an attached questionnaire to help "assist the Reasonable Accommodation Committee (RAC) or . . . in its effort to identify a position[.]" *Id.* at 4–5.  On November 1, 2018, defendant closed plaintiff's reasonable accommodation case

because she never provided the information requested in the October 9 letter.  *Id.* at 6.

Eventually, on January 17, 2020, the Social Security Administration approved plaintiff for

disability retirement and Social Security disability based on mental disability.  Doc. 59 at 5

(Pretrial Order. ¶ 4.a.67.).

## II.    **Legal Standard**

Summary judgment is appropriate when the moving party demonstrates "no genuine

dispute" exists about "any material fact" and that it is "entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(a).  When it applies this standard, the court views the evidence and draws

inferences in the light most favorable to the non-moving party.  *Nahno-Lopez v. Houser*, 625

F.3d 1279, 1283 (10th Cir. 2010).  "An issue of fact is 'genuine' 'if the evidence is such that a

reasonable jury could return a verdict for the non-moving party' on the issue."  *Id.* (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "An issue of fact is 'material' 'if

under the substantive law it is essential to the proper disposition of the claim' or defense."  *Id.*

(quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "'both the initial burden of production on a motion for summary

judgment and the burden of establishing that summary judgment is appropriate as a matter of

law.'"  *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v.

Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)).  To meet this burden, the

moving party "'need not negate the non-movant's claim, but need only point to an absence of

evidence to support the non-movant's claim.'"  *Id.* (quoting *Sigmon v. CommunityCare HMO,

Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its

pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those

dispositive matters for which it carries the burden of proof.'" *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49.  To do so, the non-moving party must identify the facts by "reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992)).  "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Phillips v. Calhoun*, 956 F.2d 949, 951 n.3 (10th Cir. 1992)).  To survive summary judgment, the non-moving party's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Id.* (citing *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999)).

The federal courts don't view summary judgment as a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327.  To the contrary, it is an important procedure "designed 'to secure the just, speedy[,] and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

## III. Analysis

Plaintiff has sued defendant USPS, asserting discrimination under Title VII and the Rehabilitation Act based on defendant abolishing her modified clerk position and reassigning her to a new position in October 2017; suspending her for 14 days in July 2018; treating her differently than other employees injured on duty—Hal Starkey and Louis Frank; and defendant's employees—Chas Rogers and Lynn Gutierrez—treating her unfairly.  Doc. 59 at 8–9 (Pretrial Order ¶ 4.a.i.).  Plaintiff also asserts a retaliation claim under Title VII and the Rehabilitation Act based on defendant abolishing her modified clerk position and suspending her for 14 days in July 2018.  *Id.* at 9 (Pretrial Order ¶ 4.a.ii.).  Defendant now argues that it's entitled to summary judgment against all claims.  For reasons explained below, the court grants summary judgment

against plaintiff's claims except for one which defendant failed to move for summary judgment against—a Title VII discrimination claim based on plaintiff's race.

### A. Title VII Discrimination Claim

Plaintiff contends that defendant discriminated against her because of her age, sex, race, and mental and physical disabilities.  Doc. 59 at 6 (Pretrial Order ¶ 3.a.).  Title VII provides a cause of action for an employee subjected to "discrimination based on race, color, religion, sex, or national origin" at work.  42 U.S.C. § 2000e–2(a)(1).  Of these protected categories, defendant contends that plaintiff can predicate her Title VII claims solely on sex discrimination. [3]  *See* Doc. 62 at 16.  Then, defendant moves for summary judgment against only plaintiff's Title VII sex discrimination claim.  *See id.* at 21–27.  The court addresses that argument, below.  Separately, defendant fails to address plaintiff's contention that it discriminated against her because of her

---

[3]     The court agrees with defendant that Title VII doesn't cover disability or age discrimination.  *See Morrison v. Beemer*, No. 21-CV-00077-STV, 2021 WL 4710304, at *3 (D. Colo. Oct. 7, 2021) ("Title VII does not cover disability discrimination") (internal citation and quotation marks omitted).  Also, the court can't construe plaintiff's allegations of disability discrimination as an Americans with Disabilities Act (ADAAA) claim because the ADAAA expressly excludes federal employees from coverage under that statute, *see* 42 U.S.C. § 12111(5)(B)(i), and the rehabilitation act provides the exclusive remedy for disability discrimination, *see Padilla v. Mnuchin*, 836 F. App'x 674, 676 n.1 (10th Cir. 2020).

But defendant never addresses plaintiff's claim that defendant discriminated against her because of her race.  Title VII plainly proscribes racial discrimination.  And although plaintiff didn't assert a claim for racial discrimination in her original Complaint (*see* Doc. 1 at 9), she explicitly referenced the factual contention that defendant had "subjected [her] to . . . discrimination based on age, sex, *race*, mental and physical disabilities, being 55 years old . . . [and as a] white female, [she] was injured on duty . . . ."  Doc. 59 at 6 (Pretrial Order ¶ 3.a.) (listing "Plaintiff's Factual Contentions") (emphasis added).  When it came time to identify her claims, plaintiff "assert[ed] that she is entitled to recover upon the following theories: i.  Discrimination under Title VII and the Rehabilitation Act . . . ."  *Id.* at 8 (Pretrial Order ¶ 4.a.i.) (identifying "Plaintiff's Claims").

While plaintiff might have done better (in a technical sense) of expressing her claims—and while defendant might have objected to plaintiff's expansion of her claims to include a race claim not asserted by the Complaint—neither party did so.  Given plaintiff's status as a pro se litigant, the court concludes that the Pretrial Order includes a Title VII claim for race discrimination.  And now that it has entered, that Order controls the future course of the case.  *See* Fed. R. Civ. P. 16(e); *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) ("When an issue is set forth in the pretrial order, it is not necessary to amend previously filed pleadings because the pretrial order is the controlling document for trial." (internal citation and quotation marks omitted)).

race.  Thus, the court doesn't grant summary judgment against plaintiff's Title VII discrimination claim based on her race, for the simple reason that defendant didn't seek summary judgment on that claim.

For her Title VII claim to survive summary judgment, "plaintiff must present either direct evidence of discrimination or indirect evidence that satisfies the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."  *Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019) (citing *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012)). Plaintiff here presents no direct evidence of discrimination based on sex.  So, the court evaluates her Title VII discrimination claim under the *McDonnell Douglas* framework.  Under it, first, plaintiff must establish a prima facie case of discrimination.  *See Khalik*, 671 F.3d at 1192. Second, if plaintiff meets her prima facie burden, then the burden shifts to defendant to provide a legitimate, non-discriminatory reason for its employment action.  *Id.*  Last, if the employer satisfies that burden, the burden then shifts back to plaintiff, and she must show that defendant's proffered reason for the employment action was pretextual.  *Id.*

Plaintiff—to establish a prima facie case of sex discrimination—must demonstrate a triable issue that:  "(1) she belongs to a protected class; (2) she suffered adverse employment action; and (3) the challenged action took place under circumstances which give rise to an inference of discrimination."  *Womack v. Unified Gov't of Wyandotte Cnty. / Kan. City, Kan.*, No. 19-2446-KHV, 2021 WL 4356085, at *8 (D. Kan. Sept. 24, 2021) (first citing *Bird v. Regents of N.M. State Univ.*, 619 F. App'x 733, 741 (10th Cir. 2015); then citing *Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002)).  Defendant argues that the court should grant summary judgment at this first step of the *McDonnell Douglas* analysis because plaintiff presents no triable prima facie discrimination claim.  For the purposes of

summary judgment, defendant only contests the third requirement of the prima facie formulation—whether the challenged action took place under circumstances giving rise to an inference of discrimination. *See* Doc. 62 at 22. Thus, the court focuses its analysis solely on that third showing.

"One method by which a plaintiff can demonstrate an inference of discrimination is to show that the employer treated similarly situated employees more favorably." *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011) (citing *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800–01 (10th Cir. 2007)). To make such a showing, plaintiff must adduce evidence that another employee's "situation is similar to hers or [the other employee] engaged in the same conduct as she." *Luke v. Hosp. Shared Servs., Inc.*, 513 F. App'x 763, 765 (10th Cir. 2013). Plaintiff contends that she's met this burden because defendant treated similarly situated male employees who required accommodations for workplace injuries—Mr. Starkey and Mr. Rogers—more favorably than her.

Plaintiff's Opposition never disputes any of defendant's factual assertions about these two employees. Thus, the following facts are undisputed, and supported by the record: Mr. Rogers worked as a mail processing clerk for defendant; he missed work from 2017 to 2020 after he had a stroke; during that time, he took leave covered by the FMLA; once he used his FMLA coverage, he took his leave without pay (LWOP); Mr. Rogers participated in defendant's reasonable accommodation program while he recovered from his stroke and received treatment; and during this time period—at least between January and July 2020—Mr. Rogers worked some 184 hours. For Mr. Starkey, it's undisputed that defendant employed him as a mail carrier, on a modified job assignment at Delano Station, and his restrictions and his job were different from plaintiff's.

Defendant argues that neither Mr. Starkey nor Mr. Rogers serve as an adequate comparable employee to plaintiff. That's so, defendant asserts, because neither of these employees' positions was subject to the same standards as plaintiff's and neither shared a supervisor with plaintiff. As our Circuit has explained, "to provide a basis for reliable comparison, the other employee must, in fact, be similarly situated—that is, reporting to the same supervisor, held to the same standards, and afoul of those standards to at least the same degree." *Roberts v. Int'l Bus. Machines Corp.*, 733 F.3d 1306, 1310 (10th Cir. 2013).

The defendant has it right. Plaintiff's Title VII discrimination claim fails to "provide a basis for reliable comparison[.]" *See id.* Mr. Rogers worked under different circumstances than plaintiff—he took FMLA leave, sick leave, and LWOP—off and on over some four years. He participated in the reasonable accommodation program and worked half days. Because of his individualized accommodations, Mr. Rogers received more time than plaintiff to return to work. After his stroke, Mr. Rogers consistently returned to work. After plaintiff left on September 15, 2017, she never once returned to work. She also failed to secure a reasonable accommodation from defendant. Plaintiff can't show that she and Mr. Rogers ran afoul of defendant's standards to the same degree. Even if she could, Mr. Rogers can't qualify as a comparator because the two employees didn't share the same supervisor. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997) ("Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." (citation and internal quotation marks omitted)). Likewise, Mr. Starkey fails as an adequate comparator because he worked a different job and worked under a different supervisor than plaintiff.

Instead of disputing defendant's factual contentions, plaintiff asserts that Mr. Starkey worked at the Delano Station when she was reassigned there, and all employees who worked

under the "same management umbrella, thus it doesn't matter what management official" they reported to.  Doc. 64 at 2.  Her Opposition also directs the court to view files containing Mr. "Roger['s] form 50 and discipline and Interrogatories Chart," "OWCP Scheduled Awards," and "EEOC Order Rules."  *Id.*  The court isn't required to dig through these files—attached to her Opposition as a zip file comprising of some 323 documents—in search of an unidentified, theoretical factual dispute that may not exist within them.  *See* Fed. R. Civ. P. 56(c)(1)(A) (the "party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to *particular* parts of materials in the record" (emphasis added)); *Peterson v. Garmin Int'l, Inc.*, 833 F. Supp. 2d 1299, 1303 (D. Kan. 2011) ("It is not the [c]ourt's obligation or responsibility to cull through the record, looking for documents that are cryptically and inaccurately referenced to in a party's submission.  It is the parties' obligation and responsibility to cite to the record specifically and with particularity.").  And though the court construes pro se plaintiff's filings liberally, it can't enlist for the job of plaintiff's advocate or excuse her from complying with its rules.  *See Hall*, 935 F.2d at 1110; *Ogden*, 32 F.3d at 455.

In sum, plaintiff fails to adduce any evidence suggesting that these employees qualify as similarly situated, let alone to adduce any evidence ruling out defendant's alternative explanation for differential treatment.  "And it falls on the employee alleging discrimination to rule out alternative explanations for the differential treatment."  *Roberts*, 733 F.3d at 1310.  In fact, the summary judgment record is completely free of any evidence supporting a reasonable finding or inference that defendant took employment action based on plaintiff's sex.  Thus, plaintiff fails to present a triable issue of Title VII sex discrimination.

The court thus grants summary judgment against this claim to the extent plaintiff relies on discrimination because of her sex.  But as referenced at the outset, the court must deny

summary judgment against plaintiff's Title VII discrimination claim to the extent plaintiff relies

on race discrimination because defendant hasn't asked for summary judgment on that claim—

and thus it hasn't furnished the court any reasoning for such an outcome.

### B. Title VII Retaliation Claim

Plaintiff's next Title VII claim alleges that defendant retaliated against her for filing an

EEO Complaint in 2015 when it reassigned her in 2017 and again when it suspended her in 2018.

Doc. 59 at 5 (Pretrial Order ¶ 2.a.62.).  "'[R]etaliation against an employee because she has

"opposed" any practice made unlawful by Title VII,' . . . is forbidden." *Lounds v. Lindcare, Inc.*,

812 F.3d 1208, 1233 (10th Cir. 2015) (quoting *Stover v. Martinez*, 382 F.3d 1064, 1070 (10th

Cir. 2004) (quoting 42 U.S.C. § 2000e-3(a))).  A plaintiff bringing a Title VII retaliation claim,

"must establish that retaliation played a part in the employment decision" and may "satisfy this

burden in two ways."  *Id.* (citations and internal quotation marks omitted).  Plaintiff "may either

(1) offer direct evidence that retaliation 'played a motivating part' in an employment decision

adverse to her interests, or (2) rely upon circumstantial evidence under 'the familiar three-part

*McDonnell Douglas* framework to prove that the employer's proffered reason for its decision is a

pretext for retaliation.'"  *Id.* (quoting *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1225 (10th

Cir. 2008)).

Like her Title VII discrimination claim, plaintiff offers no direct evidence of retaliation,

so the court evaluates her retaliation claim under the *McDonnell Douglas* burden-shifting

framework.  *See Debord v. Mercy Health Sys. of Kan., Inc.*, 737 F.3d 642, 655 (10th Cir. 2013)

(noting that "[w]here, as here, the plaintiff does not have direct evidence of retaliation, we follow

the three-step framework from *McDonnell Douglas*").

To establish a prima facie case of retaliation under Title VII, "a plaintiff must demonstrate (1) that [she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68–69 (2006)).   Defendant doesn't dispute that plaintiff engaged in protected activity when she filed an EEO complaint in 2015 and again in 2017.  Doc. 62 at 27–28.  Instead, defendant argues that plaintiff fails to present a triable issue on the causation requirement.  Specifically, she fails to adduce evidence from which a reasonable jury could find or infer that her EEO complaints caused defendant to take materially adverse action—her 2017 reassignment or 2018 suspension.

"To establish a causal connection, [plaintiff] must present 'evidence of circumstances that justify an inference of retaliatory motive.'"  *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014) (quoting *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1091 (10th Cir. 2007)).  "If the protected conduct is closely followed by the adverse action, courts have often inferred a causal connection."  *Id.*  But when a plaintiff's participation in protected activity isn't close in time to the adverse employment action, plaintiff must furnish "additional evidence . . . to establish causation."  *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (affirming summary judgment where three-month period between the protected conduct and the adverse action was too attenuated to infer causation).  And the standard for this "additional evidence" is a high one.  The Supreme Court has held that "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).

Defendant argues that its reassignment of plaintiff in 2017 wasn't an adverse employment action. But even if it did qualify as adverse employment action, plaintiff fails to present a triable issue of causation, defendant argues. The court assumes without deciding that the 2017 reassignment qualifies as an adverse employment action. But the causation prong disposes of both versions of her retaliation claim.

Plaintiff filed an EEO complaint in 2015. She testified that she believes two managers had plotted to have her reassigned after her 2015 EEO complaint. Defendant reassigned plaintiff on September 26, 2017—about two years after the 2015 EEO complaint. Standing alone, that two-year time gap between this protected activity and her reassignment can't support a finding of temporal proximity. *See Anderson*, 181 F.3d at 1179 ("a three-month period, standing alone, is insufficient to establish causation"). The same is true about plaintiff's 2018 suspension.[4] *See id.* Thus, for both instances of alleged retaliation, plaintiff must adduce additional evidence to justify an inference of retaliatory motive. She fails to do so.

Plaintiff's only evidence supporting an inference that defendant reassigned her because of her protected activity is her own speculative statement that she believes two managers plotted against her. *See* Doc. 62-2 at 68 (VanHorn Dep. 68:2–21). That's not enough to create a genuine dispute. *See Ward*, 772 F.3d at 1203 (affirming summary judgment against Title VII retaliation claim where plaintiff failed to present evidence that plaintiff's participation in EEOC proceedings was the but-for cause of defendant's adverse employment actions). Plaintiff's only evidence that defendant retaliated against her with the 14-day suspension consists of her own

---

[4]     Plaintiff claims that defendant retaliated against her for her 2015 EEO claim, not her 2017 EEO activity. But even if the court considered her 2017 EEO activity as the protected activity used in the causation analysis, defendant's only allegedly adverse employment action occurred after this activity— the 2018 suspension—occurred more than a year later. Thus, even if the court considered this closer in time EEO activity, plaintiff still must adduce additional evidence of causation. She fails to do so, and the court's analysis would remain the same.

statements that she believes the Post Office acted aggressively when it implemented her discipline, and she had "seen [defendant] work with other people," but they had refused to work with her.  *See* Doc. 62-2 at 72 (VanHorn Dep. 189:5–16).  Plaintiff's causation evidence is nothing more "'than mere speculation, conjecture, or surmise.'"  *Ward*, 772 F.3d at 1203 (quoting *Bones*, 366 F.3d at 875).

In sum, plaintiff hasn't presented any evidence connecting the adverse employment actions to her participation in the EEOC proceedings.  Thus, she hasn't satisfied her prima facie burden, so the court grants summary judgment against this claim.

### C.  Rehabilitation Act Discrimination Claim

Plaintiff also brings a claim of discrimination against her former employer under the Rehabilitation Act.  Doc. 59 at 8–9 (Pretrial Order ¶ 4.a.i.).  This Act "prohibits the federal government . . . from discriminating against individuals on the basis of a disability [and] it creates a private right of action for disabled individuals, including federal employees who claim disability discrimination in connection with their employment."  *Detterline v. Salazar*, 320 F. App'x 853, 856 (10th Cir. 2009) (first citing 29 U.S.C. § 794a; then citing *McGeshick v. Principi*, 357 F.3d 1146, 1149 (10th Cir. 2004)).  It provides "the exclusive remedy for discrimination in employment by the Postal Service on the basis of handicap."  *Johnson v. U.S. Postal Serv.*, 861 F.2d 1475, 1477 (10th Cir. 1988) (internal citation and quotation marks omitted).

Like the Title VII analysis, when a plaintiff lacks direct evidence of discrimination, as here, the burden shifting framework of *McDonnell Douglas* applies.  *See Cummings v. Norton*, 393 F.3d 1186, 1189 n.1 (10th Cir. 2005) ("This [c]ourt, however, has clearly held that the *McDonnell Douglas* burden-shifting applies to Rehabilitation Act claims.").  To make a prima

facie case of discrimination under the Rehabilitation Act, a plaintiff must establish three elements:  (1) she was a disabled person under the statute, (2) she was otherwise qualified for the job regardless of the disability, and (3) defendant took employment action because of her disability.  *Bennett v. Henderson*, 15 F. Supp. 2d 1097, 1105–6 (D. Kan. 1998); *Woodman v. Runyon*, 132 F.3d 1330, 1338 (10th Cir. 1997); *see also Cummings*, 393 F.3d at 1189.  If plaintiff establishes a prima facie case of discrimination, the burden shifts to defendant to articulate a nondiscriminatory reason for its employment decision.  *See Cummings*, 393 F.3d at 1189.  If defendant does so, then, the burden shifts back to plaintiff to present a triable issue that defendant's stated reason is merely pretextual.  *Id.*

Defendant assumes, for summary judgment purposes, that plaintiff is disabled under the Act.  But defendant claims the court should grant summary judgment against this claim because plaintiff can't present a triable prima facie case.  And even if she could, defendant argues, her claim would fail at the pretext stage of the analysis.  First, on the prima facie case, defendant argues that plaintiff can't show she was qualified for the job or that defendant took an adverse action against her based on her disability.  Next, defendant argues even if plaintiff could satisfy the prima facie elements, defendant had legitimate reasons for both reassigning her and suspending her—and, she presents no triable issue of pretext for those decisions.  The court agrees with defendant, and for both reasons, grants summary judgment against this claim.

First, plaintiff fails to present a triable prima facie case of discrimination.  No evidence can support a finding or inference that defendant acted because of plaintiff's disability.  Defendant contends that it reassigned her position because of a reduction of work.  Following its grievance process, defendant reassigned plaintiff to a position at its Customer Care Center—a position that met plaintiff's physical restrictions.  Defendant asserts that it suspended plaintiff for

14 days in July 2018 after plaintiff had stopped reporting to work in September 2017, and

defendant implemented a progressive discipline plan for her unexcused absences.  Defendant

argues that this suspension resulted from plaintiff's failure to show up for work—not her

disability.  Plaintiff doesn't dispute any of defendant's reasons.  *See* Doc. 64 at 2.  The court can

grant summary judgment on that ground alone.  *See Hinsdale v. City of Liberal, Kan.*, 19 F.

App'x 749, 768 (10th Cir. 2001) (affirming district court's summary judgment against plaintiff's

claim because plaintiff had "abandoned [the] claim by failing to address it in his response to

defendants' motion for summary judgment"); *Loudon v. K.C. Rehab. Hosp., Inc.*, 339 F. Supp.

3d 1231, 1242 (D. Kan. 2018) (holding that plaintiff had abandoned claim by not responding to

defendant's summary judgment arguments attacking the claim).  The court also finds the

summary judgment record supports defendant's articulated reasons.  Thus, the court concludes,

plaintiff has failed to establish a triable prima facie Rehabilitation Act discrimination claim that

defendant reassigned her or suspended her employment because of her disability.

Second, and even if plaintiff could establish a prima facie case of discrimination, her

claim still fails at the pretext stage of the analysis.  As explained above, defendant asserts—and

the summary judgment facts establish—defendant had legitimate non-discriminatory reasons for

the employment actions it took against plaintiff.  Defendant shifts the burden back to plaintiff to

present evidence creating a triable issue of pretext.  When analyzing the pretext question, the

court doesn't "ask whether the employer's reasons were wise, fair or correct[.]"  *Riggs v.

AirTran Airways, Inc.*, 497 F.3d 1108, 1118 (10th Cir. 2007).  Instead, the court asks "whether

the employer honestly believed its reasons and acted in good faith upon them."  *Id.* at 1119.  Like

her other claims, plaintiff fails to rebut any of defendant's proffered legitimate reasons.  Thus,

plaintiff fails to present a triable issue of pretext.  Either of defendant's arguments—causation or

pretext—wins the day on summary judgment.  Thus, the court grants summary judgment against this claim.

### D. Rehabilitation Act Retaliation Claim

Plaintiff's fourth and final claim asserts that defendant retaliated against her, violating the Rehabilitation Act.  Doc. 59 at 9 (Pretrial Order ¶ 4.a.ii.).  Plaintiff uses the same underlying theory for this retaliation claim that she used for her Title VII claim.  *Id.*

Again, the *McDonnell Douglas* burden shifting framework applies to this claim.  *See Cummings*, 393 F.3d at 1189 n.1 ("*McDonnell Douglas* burden-shifting applies to Rehabilitation Act claims").  Plaintiff "can establish a prima facie case by showing:  (1) that she engaged in protected activity; (2) that she suffered a materially adverse action by [her employer] either after or contemporaneous with her protected activity; and (3) a causal connection between the protected activity and the adverse action."  *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010).  These elements are essentially the same ones necessary to establish a prima facie case for her Title VII retaliation claim, as stated above.  *See supra* at 19, (citing *Argo*, 452 F.3d at 1202).  Thus, plaintiff's Rehabilitation Act claim fails for the same reasons her Title VII retaliation claim does.  She fails to adduce any evidence of a causal connection between any protected activity—her EEO complaints—and the adverse action—her reassignment and suspension.  Defendant subjected plaintiff to these employment actions years after she filed an EEO complaint.  It had legitimate reasons for doing so.  Plaintiff never disputes any of defendant's legitimate non-discriminatory reasons for reassigning and suspending her.  Plaintiff fails to present any evidence that defendant acted because of her disability.  Thus, the court grants summary judgment against this final claim.

## IV.     Motion to Strike

When plaintiff filed her Response (Doc. 64) she also emailed two zip files containing some 323 documents to the court.  Defendant asks the court to strike plaintiff's exhibits.  After granting summary judgment against all of plaintiff's claims (except a single claim that defendant didn't move for summary judgment on) the court denies this request as moot.

## V.     Conclusion

Defendant hasn't moved for summary judgment against plaintiff's Title VII discrimination claim to the extent that the claim covers her allegations of discrimination *based on race*.  The court thus declines to grant summary judgment against that claim.  But on the rest of her claims, plaintiff fails to present triable prima facie Title VII or Rehabilitation Act claims. The summary judgment record shows that defendant had legitimate reasons for the employment actions it took against plaintiff.  And plaintiff largely failed to contest any of defendant's material facts or legal arguments.  Thus, the court grants summary judgment against the remainder of plaintiff's claims.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion for Summary Judgment (Doc. 61) is granted in part, and denied in part, as explained in this Order.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant's Motion to Strike (Doc. 67) is denied as moot.

**IT IS SO ORDERED.**

**Dated this 28th day of April, 2023, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
